IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


GURCHARAN SINGH,                                        No. 3:18-cv-01374-HZ

        Plaintiff,

    v.

SHELLPOINT MORTGAGE SERVICING                          OPINION & ORDER
and MTGLQ INVESTORS, L.P.,

        Defendants.

John A. Cochran
Pacific Property Law LLC
16811 Lakeridge Dr.
Lake Oswego, OR 97034

        Attorney for Plaintiff

David J. Elkanich
Nellie Q. Barnard
Holland & Knight LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204

        Attorneys for Defendants

HERNÁNDEZ, District Judge:

Plaintiff Gurcharan Singh brings seven claims for relief against Defendants Shellpoint Mortgage Servicing and MTGLQ Investors, L.P. These claims include: (1) a request for declaratory judgment, (2) unjust enrichment and fraud, (3) violations of the Fair Debt Collection Practices Act, (4) conversion, (5) breach of good faith and duties of care, (6) violation of the Equal Credit Opportunity Act and Fair Housing Act, and (7) misrepresentation. Before the Court is Defendants' motion to dismiss Plaintiff's amended complaint for failing to state a claim upon which relief may be granted. For the reasons that follow, Defendants' motion is GRANTED.

## BACKGROUND

On July 19, 2001, Plaintiff executed a residential Deed of Trust for the property located at 14599 NE Brazee Court in Portland, Oregon, and secured a Note in the amount of $160,000. Am. Compl. ¶ 1; Mot. Judicial Notice, Ex. B. In June 2017, Plaintiff was promised a favorable loan modification on that Note. *Id.* In return, Plaintiff paid "approximately $125,413 to make the loan current/not in default status." *Id.* Instead of receiving a loan modification, however, Plaintiff was told he needed to pay an additional $4,816.24 "to make the loan current." *Id.* Plaintiff paid the additional $4,816.24, but still did not receive a loan modification. *Id.* After repeated calls to Defendants' representative, who initially promised to investigate the matter, Plaintiff was eventually told that the representative "could not help in any way" and "Plaintiff would have to simply find another bank for a better loan." *Id.* ¶ 2. When Plaintiff protested, the representative "replied that people in India sleep in the streets so what are you complaining about." *Id.*

While it is unclear to the Court when or if Defendants threatened or initiated foreclosure proceedings, Plaintiff does allege that "the lender" repeatedly called him for "payment and

collection" but "would not supply any documentation or validate that amount was proper or legitimate." *Id.* ¶ 4.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). However, the court need not accept conclusory allegations as truthful. *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992).

A motion to dismiss under Rule 12(b)(6) will be granted if plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). Additionally, "only a complaint that states a plausible claim for relief

survives a motion to dismiss." *Id.* The complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

## DISCUSSION

Defendants move (1) for judicial notice, (2) to strike factual allegations raised in Plaintiff's response to the motion to dismiss that do not appear in the amended complaint, and (3) to dismiss the amended complaint for failing to state a claim.

### I.   Judicial Notice

Defendants move for judicial notice of the following records:

A.   A Deed of Trust dated July 19, 2001 and recorded in Multnomah County land records under record number 2001-112853 on July 23, 2001;

B.   The Note executed by Plaintiff on or about July 19, 2001;

C.   A copy of the June 6, 2012 Corporate Assignment of Deed of Trust recorded in Multnomah County land records on or about August 3, 2012 under record number 2012-094962;

D.   A copy of the December 15, 2014 Oregon Assignment of Deed of Trust recorded in Multnomah County land records on or about June 4, 2015 under record number 2015-066295; and

E.   A copy of the June 16, 2016 Assignment of Deed of Trust recorded in Multnomah County land records on or about June 29, 2016 under record number 2016-079490.

Mot. Judicial Notice Exs. A–E. Plaintiff does not respond to this motion.

Federal Rule of Evidence 201 governs judicial notice of adjudicative facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The court must take judicial notice if requested by a party and supplied with the necessary information. Fed. R. Evid. 201(c), (d).

A court may take judicial notice of public records. *Santa Monica Food not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006). In particular, "documents in county land records are properly subject to judicial notice." *Durham v. Bank of New York Mellon*, Civ. No. 12-273 PA, 2012 WL 2529188, at *1 (D. Or. June 28, 2012). A court may also take judicial notice of documents referenced in the complaint. *Elizabeth Retail Properties LLC v. KeyBank Nat. Ass'n*, 83 F. Supp. 3d 972, 984 (D. Or. 2015). More specifically, a court may "consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). A court's decision to take judicial notice of documents that are matters of public record does not convert a motion to dismiss into a motion for summary judgment. *See, e.g.*, *Zucco Partners, LLC v. Digimarc Corp.*, 553 F.3d 981, 989 (9th Cir. 2009) (court may consider judicially noticed documents on Rule 12(b)(6) motion); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (district court, when determining whether complaint fails to state a claim, may take "judicial notice of matters of public record outside the pleadings[.]").

Here, exhibits A and B—the Deed of Trust and Note—are explicitly referenced and relied on in the amended complaint. Exhibits A, C, D, and E were recorded in the Multnomah County land records. Plaintiff raises no objections to these exhibits. Thus, the Court takes judicial notice of each requested document.

## II.     Motion to Strike

"As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)

(quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)). The Court's decision to grant Defendants' motion for judicial notice does not convert Defendants' motion to dismiss into a motion for summary judgment. *See id.* The Court therefore strikes all facts raised in Plaintiff's response to Defendants' motion to dismiss which are not alleged in the underlying complaint.

### III.    Failure to State a Claim

#### a.    Claim 1: Declaratory Judgment

The Declaratory Judgment Act authorizes a district court to declare the rights and other legal relations of parties in cases of "actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). "A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases 'brought by any interested party' involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so." *Seattle v. Audubon Soc. v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) (citing 28 U.S.C. § 2201; 10A Wright & Miller, Federal Practice and Procedure, § 2751).

A "separate declaratory relief claim should not be used . . . to determine identical issues subsumed within other claims." *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1189 (E.D. Cal. 2010) (finding that the "resolution of [the plaintiff's] quiet title claim will necessarily determine 'who owns [the plaintiff's] Subject property'" making the declaratory relief claim "entirely duplicative" of the plaintiff's other claims); *see also Camillo v. Wash. Mut. Bank, F.A.*, No. 1:09–CV–1548 AWI SMS, 2009 WL 3614793, at *13 (E.D. Cal. Oct. 27, 2009) (dismissing declaratory relief claim as redundant where there was no reason to believe it would "resolve any issues aside from those already addressed by the substantive claims" in the case) (internal quotation marks omitted). "[T]he requirements of pleading and practice in actions for declaratory

relief are exactly the same as in other civil actions." *Kam-Ko Bio-Pharm Trading Co. Ltd-Australia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009) (citation omitted).

Here, while the claim titled "Declaratory Judgment – Standing" references various forms of relief,[1] the Court identifies a single request for a declaration of rights: "Plaintiff requests a declaratory judgment as to the lawful holder of the Note and the proper beneficiary/Owner under the Deed of Trust." Am. Compl. ¶ 27.

Defendants argue that Plaintiff has failed to allege facts to support his position that Defendant MTGLQ is not entitled to collect on the Note or enforce the Deed of Trust. The Court agrees. At most, Plaintiff offers only conclusory allegations that include, for example,

> (1) the "Note was sold and Defendant no longer owns or has full dominion over" it. Am. Compl. ¶ 18.
>
> (2) Defendant has no economic or beneficial interest in Plaintiff's Note. *Id.* ¶ 20.
>
> (3) Any assignment "was not executed by or pursuant to any instruction from property beneficiary respecting Plaintiff's Note or Security Instrument and is invalid and has no legal effect regarding Plaintiff's Note and Security Instrument." *Id.* ¶ 21.
>
> (4) "Plaintiff denies that Defendants had any agency relationship with potential future and unidentified successor to the Lender when Plaintiff executed its Security Instrument." *Id.* ¶ 26.

In sum, Plaintiff fails to allege any facts to support his position that Defendant MTGLQ is not entitled to collect on the Note or enforce the Deed of Trust. Given exhibit E, the assignment of the Deed of Trust to MTGLQ, the claim is dismissed.

### b. Claim 2: Unjust Enrichment and Fraud

Under Oregon law, a claim for unjust enrichment has three elements: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant was aware that it had received a benefit;

---

[1] For example, Plaintiff requests attorneys fees and that "all attempts to foreclosure or collect on Note and security Instrument be rescinded and enjoined." Am. Compl. ¶ 27. Plaintiff has not, however, moved for a preliminary injunction or alleged that foreclosure proceedings have been threatened or initiated.

and (3) under the circumstances, it would be unjust for the defendant to retain the benefit without paying for it." *Winters v. County of Clatsop*, 210 Or. App. 417, 421 (2007).

While less than clear, the Court reads the amended complaint to allege two possible benefits conferred by Plaintiff: (1) Plaintiff's monthly payments on the Note and (2) any possible foreclosure action. Thus, according to Plaintiff, because Defendant[2] is a "false lender"—with no right to enforce the Note or Deed of Trust—it is unjust for Defendant to retain these monthly payments or foreclose on the property.

Defendants argue that Plaintiff has failed to allege that Defendants received a benefit to which they were not entitled, because "MTGLQ has the authority to enforce the Deed of Trust by virtue of the 2016 Assignment." Def. Mot. 7–8. While Plaintiff has alleged that "Defendants do not have proper authority or right to enforce the note or deed of trust," the Court agrees that Plaintiff has not alleged any facts to support this allegation. Again, the Court notes the existence of the assignment to MTGLQ, recorded in the Multnomah County land records. Because Plaintiff has failed to allege any facts to support his claim that Defendants have no right to enforce the Note or Deed of Trust, Plaintiff has failed to allege why it would be unjust for Defendants to retain the benefit of the monthly payments or a foreclosure.

Additionally, Plaintiff labels the claim as fraud and at least references "fraudulent" actions. Under Oregon law, fraud requires (1) a material, false representation; (2) the defendant's knowledge of its falsity; (3) the defendant's intent that the plaintiff rely on the misrepresentation; (4) the plaintiff's justifiable reliance on the misrepresentation; and (5) damages as a result of such reliance. *Horton v. Nelson*, 252 Or. App. 611, 616 (2012). Again, while the amended complaint is unclear, the Court believes Plaintiff to allege that Defendant made a "material, false

---

[2] While the Court assumes Plaintiff intends to identify MTGLQ as the "false lender," Plaintiff does not name MTGLQ specifically.

representation" by asserting a legal right to collect Plaintiff's assets. However, Plaintiff has failed to allege any facts to support this allegation. Claim 2 is therefore dismissed.

### c. Claim 3: Fair Debt Collection Practices Act

Plaintiff brings five counts under the Fair Debt Collection Practices Act (FDCPA). As a general matter, "[t]o state a claim under the FDCPA, a plaintiff must allege (1) she has been the object of collection activity arising from a consumer debt, (2) the defendant is a debt collector, (3) and the defendant's conduct is prohibited by the FDCPA." *Lampshire v. Bank of Am., N.A.*, No. 6:12-cv- 01574-AA, 2013 WL 1750479, *3 (D. Or. Apr. 20, 2013) (internal citations and quotation marks omitted).

#### i. Count 1: 15 U.S.C. § 1692e(2)

Under 15 U.S.C. § 1692e(2),

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of--

(A) the character, amount, or legal status of any debt[.]

Plaintiff appears to allege that Defendant Shellpoint falsely represented the "legal status" of the debt because it has not *shown* Plaintiff that it had the legal right to enforce the Note. Plaintiff also alleges that Defendant attempted to collect a debt that was not in default, "communicated false information about of the legal status of the alleged debt," and "demanded large sums of money in a fraudulent manner." Am. Compl. ¶¶ 46, 47, 48. Plaintiff has failed to allege any facts to support these contentions. For example, he has not alleged facts that suggest Defendant Shellpoint did not have a legal right to enforce the Note or that his debt was not in default. This count is therefore dismissed.

### ii. Counts 2, 3, 4: 15 U.S.C. § 1692f

Under 15 U.S.C. § 1692f,

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.[3]

Counts 2, 3, and 4 appear to depend on Plaintiff's allegation that Defendant Shellpoint has not shown that it or "its principal" had a legal right to enforce the Note. As a general matter, it is not clear to the Court which actions Plaintiff relies on to support his claim that Defendants used "unfair or unconscionable means to collect or attempt to collect a debt." To the extent Plaintiff relies on his allegation that Shellpoint and MTGLQ are not "valid Holder[s] of Plaintiff's Note," he cites no facts to support this claim. To the extent he intends to rely on 15 U.S.C. § 1692f (1) specifically, he fails to allege that the amount sought and collected was not authorized by the agreement creating the debt or permitted by law. Rather, he alleges only that Defendant Shellpoint violated § 1692f (1) by attempting to collect an amount without first *showing* it was permitted to do so. He provides no support, however, for his position that this showing is a prerequisite to collection under 15 U.S.C. § 1692f. Without further argument from Plaintiff, counts 2, 3, and 4 are dismissed.

### iii. Count 5: 15 U.S.C. § 1692e(2), (f), and f(1)

Plaintiff alleges that "Shellpoint and MTGLQ violated 15 U.S.C. §§ 1692 e(2), f, & f(1) when it failed to validate and misrepresented the character, amount, or legal status of the alleged debt associated with the Note when attempting to collect and receive monies it is not entitled to

---

[3] Plaintiff does not identify which subsection he relies on. Based on the allegations, the Court assumes he means subsection (1).

and threaten foreclose on Plaintiff's personal property rights in the Note and real property rights in the property." Am. Compl. ¶ 81. The Court sees no difference between the allegations in this count and the allegations in counts 1-4. [4] Thus, for the reasons stated above, this count is dismissed.

### d. Claim 4: Conversion

Under Oregon law, "[a]n individual commits the act of conversion when, without the legal right to do so, he or she exercises dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *In re Peterson*, 348 Or. 325, 335 (2010) (citation and quotation marks omitted). "A chattel is '[m]ovable or transferable property; personal property; esp. a physical object capable of manual delivery and not the subject matter of real property.'" *Rapacki v. Chase Home Finance LLC*, 797 F.Supp.2d 1085, 1092 (D. Or. 2001) (quoting Black's Law Dictionary 268 (9th ed. 2009)).

The amended complaint does not identify the "chattel" on which Plaintiff's claim is based. To the extent Plaintiff alleges that Defendants have converted the Note itself, the claim fails: even if a Note is chattel, Plaintiff has not alleged that he has any ownership over—or legal right to control—the Note. To the extent Plaintiff alleges that Defendants have converted other property *referenced* in the Note—presumably, Plaintiff's house—Plaintiff's claim also fails. Not only has Plaintiff failed to allege either a foreclosure or an attempted foreclosure, but "[c]laims based on an alleged foreclosure of real property cannot be considered conversion claims because real property is not a chattel." *Meza-Lopez v. Deutsche Bank Nat. Trust Co.*, No. 3:11–cv–00891–HU, 2012 WL 1081454, *10 (D. Or. Feb. 13, 2012). Claim 4 is therefore dismissed.

---

[4] As noted by Defendants, Plaintiff does reference a "failure to validate." However, the Court agrees that Plaintiff has failed to provide any facts to support this allegation.

**e.  Claim 5: Breach of Good Faith and Duties of Care**

Under Oregon law, "[s]o long as it is not inconsistent with the express terms of a contract, the duty of good faith and fair dealing is a contractual term that is implied by law into every contract." *Eggiman v. Mid-Century Ins. Co.*, 134 Or. App. 381, 386 (1995) (internal quotation omitted); *see also Best v. U.S. Nat'l Bank of Or.*, 303 Or. 557, 561 (1987) (court has long recognized that there is an obligation of good faith in the performance and enforcement of every contract). The contractual good faith doctrine is designed to "effectuate the reasonable contractual expectations of the parties." *Best*, 303 Or. at 563; *see also Klamath Off-Project Water Users, Inc. v. Pacificorp*, 237 Or. App. 434, 445 (2010) (common law implied duty of good faith and fair dealing serves to effectuate the objectively reasonable expectations of the parties).

The purpose of the duty of good faith is to prohibit improper behavior in the performance and enforcement of contracts, and to ensure that the parties "will refrain from any act that would 'have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Iron Horse Eng'g Co. v. Nw. Rubber Extruders, Inc.*, 193 Or. App. 402, 421 (2004) (quoting *Perkins v. Standard Oil Co.*, 235 Or. 7, 16 (1963)).  The duty "does not operate in a vacuum[;]" rather it "focuses on the agreed common purpose and the justified expectations of the parties, both of which are intimately related to the parties' manifestation of their purposes and expectations in the express provisions of the contract." *Or. Univ. Sys. v. Or. Pub. Emp. Un*, 185 Or. App. 506, 511, 515–16 (2002) (further noting that the duty "may be implied as to a disputed issue only if the parties have not agreed to an express term that governs that issue" and explaining that "indeed, the reasonable expectations of the parties are irrelevant if the parties have agreed to express terms governing that issue"). The duty "cannot contradict an express

contractual term, nor does it provide a remedy for an unpleasantly motivated act that is permitted expressly by the contract." *Stevens v. Foren*, 154 Or. App. 52, 58 (1998). Additionally, in the absence of a contract between the plaintiff and the defendant, a plaintiff cannot bring a claim for breach of the covenant of good faith and fair dealing. *Davis v. Pacific Saw & Knife Co.*, No. CV-08-676-HU, 2008 WL 4319981, at *2 (D. Or. Sept. 16, 2008).

Here, Plaintiff alleges that "Quality Loan[5] failed to:

(a) Exercise its duty of good faith toward the borrower by collecting, harassing, demanding payment with no proper legal accounting to put the account in "good" standing and not even having the proper legal authority to make such demands and take large sums of unaccounted proceeds from Mr. Singh and never producing the proper legal records to show said authority, or its principal was fully entitled to enforce the Note under the UCC.

(b) Abide by the law having concealed material information needed by Plaintiff related to an alleged default and the Holder's right to declare a default and the amount of said default and who was proper party to receive said funds or even the proper party so he had option to surrender the property to the proper Person.

(c) Provide records to show Shellpoint, or its principal, was the valid Holder of the Note, to which she could surrender the property."

Am. Compl. ¶ 97. Plaintiff also alleges that:

Shellpoint and MTGLQ both failed to fulfill its duty to Plaintiff by failing to act in a legal and reasonable manner, to which Plaintiff could keep his Property out of default situation or foreclosure of said Property, with the assurances he sought. Instead, he paid large sums for default with continued misrepresentations as to what he owed and how much he needed to pay to keep it out of default. Additionally, statements were made to him that were insulting, degrading and racist in nature.

*Id.* ¶ 98. Plaintiff does not respond to Defendants' motion on this issue.

As an initial matter, the claim against Defendant Shellpoint fails. A claim for breach of the implied contractual obligation of good faith and fair dealing requires a contract between the parties. *Rapacki v. Chase Home Fin. LLC*, 797 F. Supp. 2d 1085, 1091 (D. Or. 2011). A loan

---

[5] The Court assumes Plaintiff intended to name either Defendant MTGLQ or Defendant Shellpoint.

servicer is not a party to a deed of trust. *Lomboy v. SCME Mortg. Bankers*, No. C-09-1160-SC, 2009 WL 1457738, at *5 (N.D. Cal. May 26, 2009). Thus, because Defendant Shellpoint is a loan servicer—and Plaintiff has not alleged any other contractual relationship under which this claim is brought—the claim is dismissed.

The claim against Defendant MTGLQ also fails. Read literally, the amended complaint suggests that Plaintiff disputes the existence of a contractual relationship in the first place. *See, e.g.*, Am. Compl. ¶ 97 (alleging Defendant(s) did not have "proper legal authority" to collect payments from Plaintiff). Even assuming that Plaintiff intends to allege, at least in the alternative, that he has a contractual relationship with Defendant MTGLQ, his remaining allegations include: that Defendant (1) refused him a loan modification, (2) refused to produce the Note, (3) refused to perform a "legal accounting," (4) concealed material information, (5) made misrepresentations, and (6) made insulting and racist comments. Plaintiff fails, however, in the amended complaint or his response to the motion to dismiss, to connect these allegations to a breach of an implied duty of good faith. He has not, for example, explained how these actions depart from the agreed-upon terms of the contract, or contravened the parties' objectively reasonable expectations under the contract. He has also failed to identify the contractual basis for a loan modification, the production of the Note, or a legal accounting. He has even failed to identify what material information was concealed or what misrepresentations were made. Thus, without more information tying the above allegations to any specific contract, Plaintiff has failed to state a claim for a breach of the implied duty of good faith.

### f. Claim 6: Equal Credit Opportunity Act/Fair Housing Act[6]

### i. Equal Credit Opportunity Act

Under the Equal Credit Opportunity Act (ECOA), "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, [or] national origin[.]" 15 U.S.C. § 1691(a)(1). To state a claim under the ECOA, "a plaintiff must allege facts that plausibly suggest (1) [he] was a member of a protected class; (2) he applied for credit from defendants; and (3) [he] was denied credit on the basis of his protected class." *Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971, 980 (D. Or. 2016). "Facts that might plausibly suggest that the denial of credit was because of or on the basis of an applicant's protected status may include: (1) that the applicant was qualified to receive credit and was denied credit despite being qualified; (2) facts demonstrating discriminatory animus or treatment by the defendant; or (3) that persons not within the protected class were granted extensions of credit by the defendant." *Id.* But pleading such facts does not relieve the plaintiff of the requirement to plead that the alleged denial of credit was on the basis of the plaintiff's protected status. *Id.*

Here, Plaintiff fails to allege he is a member of a protected class—whether based on race, religion, or national origin.[7] While Plaintiff alleges that he applied for credit in the form of a favorable loan modification, he also fails to allege that he was denied credit on the *basis* of any protected status. Specifically, while he identifies a statement from a bank representative that

---

[6] While Plaintiff also cites the "Civil Rights Act" in the title of this claim, he raises no relevant allegations or argument to support this cause of action.

[7] Plaintiff does allege that a "comment was racially motivated and showed a prejudice against Plaintiff and unwillingness to help him at all based on his national origin" and that "Muslims or non-christians may receive the respect of the Commonwealth in this country or in American Society but they do not deserve to blatantly receive discrimination[.]" Am. Compl. ¶ 99. However, given that the Court cannot determine, after reading this complaint, Plaintiff's (1) race, (2) national origin, or (3) religion, Plaintiff has clearly failed to allege that he is a member of any protected class.

demonstrates discriminatory animus—that "people in India sleep on the streets so what are you complaining about"—he fails to connect that statement with the loan modification itself. Rather, he alleges that the bank first refused to modify his loan and then went "on to make racially motivated statements," and that "a representative "use[d] racially motivated language to express a callous disregard for Plaintiff's attempt to save his personal residence and use that same racially  motivated  language to follow up a complete unwillingness to engage in loss mitigation options[.]" Am. Compl. ¶ 99.  In other words, Plaintiff fails to allege that the bank denied him a loan modification *because* of his protected status.

### ii.  Fair Housing Act

Under the Fair Housing Act (FHA), it is "unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, . . . or national origin." 42 U.S.C. § 3605.

As explained in *Egbukichi*, "the Ninth Circuit has instructed that the threshold for pleading discrimination claims under the [FHA] is low . . . [and] the Supreme Court has recognized the FHA's broad and inclusive compass and has instructed courts to accord a generous construction to the Act's complaint-filing provision." 184 F. Supp. 3d at 980 (citations omitted).

Even with a generous construction, however, Plaintiff has still failed to allege, at a minimum, that he is a member of a protected class or that he was discriminated against *because* of his membership in a protected class.

Claim 6 is therefore dismissed.

### g. Claim 7: Misrepresentation

Defendants argue that Plaintiff fails to state a claim for "misrepresentation," which they construe as a claim for fraud. Because Plaintiff does not respond or direct the Court to another cause of action, the Court follows Defendants' lead and analyzes claim 7 as a claim for fraud.

Under Oregon law, a fraud claim has nine elements:

> (1) a misrepresentation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury.

*Estate of Schwarz v. Philip Morris Inc.*, 206 Or. App. 20, 38–39 (2006), aff'd 348 Or. 442 (2010).

Under Federal Rule of Civil Procedure 9(b), "the circumstances constituting fraud or mistake shall be stated with particularity." To satisfy Rule 9(b),

> a plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading.

*Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) (emphasis in original) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)).

Generally, a plaintiff must plead the "time, place, and content" of the false representation. *See In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1410 (9th Cir. 1996) (affirming district court's Rule 9(b) dismissal of certain allegations that stated the time, place, and content in the "broadest of terms"). A plaintiff must also state "the identities of the parties to the misrepresentation," *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986), and, in a case involving multiple defendants, "at a minimum, 'identify the role of each defendant in the alleged fraudulent scheme.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th

Cir. 2007) (quoting *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (internal brackets omitted)).

Plaintiff alleges that Defendant said if he paid "$125,413 to Defendant then Defendant would grant a favorable loan modification to Plaintiff." Am. Compl. ¶ 103. Upon receiving this payment, however, Defendant denied Plaintiff the loan modification and demanded more money. *Id.*

Defendants argue that Plaintiff has failed to identify which defendant made the alleged misrepresentation, or the date this misrepresentation occurred. They also argue that Plaintiff failed to allege that he applied for a loan modification in the first place. While Defendants cite no law and give no explanation for their position that Plaintiff must allege that he *actually* applied for a loan modification to proceed on this claim, the Court agrees that Plaintiff has failed to allege, at a minimum, which defendant made the misrepresentation, and the date of that misrepresentation. Claim 7 is therefore dismissed.

## CONCLUSION

The Court GRANTS Defendants' motion to dismiss without prejudice and with leave to amend. Plaintiff may file an amended complaint with 14 days of the date of this order.

Dated this ⎪⎪ day of ___Nov_____, 2019.


_____
MARCO A. HERNÁNDEZ
United States District Judge